**MENDEZ et al. v. QUINONES et al.**
Civ. No. 4871.

District Court, Puerto Rico.
July 28, 1948.

Celestino Iriarte, F. Fernandez Cuyar & H. Gonzalez Blanes, of San Juan, Puerto Rico, for plaintiffs.

Jorge L. Cordova and R. Cuevas Zequeira, both of San Juan, Puerto Rico, for defendants.

CHAVEZ, District Judge.

The Court finds that plaintiff Estrella B. Mendez and the deceased Tomas Mendez Quinones, were married in 1929 and lived together as husband and wife until 1941 when plaintiff Estrella B. Mendez left for New York and separated from Tomas Mendez Quinones; that of said union two children were born, to wit, Tomas Antonio Mendez and Carlos Antonio Mendez, who are now minors. That Tomas Mendez Quinones died intestate in San Juan, Puerto Rico on the 21st of September 1944 and the only legitimate heirs of Tomas Mendez Quinones are the plaintiff Estrella B. Mendez and the above mentioned children. That plaintiff, Estrella B. Mendez filed suit for separation and maintenance in New York State and obtained in cause Index No. 7017/1941 on April 5, 1943, a judgment of separation on the grounds of cruel and inhuman treatment of plaintiff, Estrella B. Mendez and for the failure of Tomas Mendez Quinones to provide for her support and the support of the issue of said marriage; and granting plaintiff Estrella B. Mendez the exclusive custody of the children Tomas Mendez and Carlos Antonio Mendez and also ordering Tomas Mendez Quinones to pay $60 per week from April 6, 1943 for the support and maintenance of plaintiff and her two children. That in the cause in New York, the Court made such further orders as appear in plaintiff's Exhibit "C", on file in this cause.

The Court finds that the plaintiff Estrella B. Mendez after the judgment was rendered in New York in her favor on April 5, 1943, filed on March 27, 1944 a suit in the District Court for the Judicial District of San Juan, Puerto Rico, against the deceased Tomas Mendez Quinones, in cause number Civil R–1788 praying for a judgment against the deceased Tomas Mendez Quinones in the sum of $2,705.75. That summons in said cause Civil R–1788 was served upon the deceased Tomas Mendez Quinones on March 27, 1944, all as shown in Exhibit D for plaintiff, on file in this cause.

The Court finds that the defendant Prudencio Mendez had a safe of the deceased, Tomas Mendez Quinones, forcibly opened and was present at the time of the opening of said safe, a few days before 9/21/1944, and took therefrom $69,000 which sum the said Prudencio Mendez later delivered to plaintiffs' attorney, and an additional sum of $50,000 which he, the said Prudencio Mendez, fraudulently withheld from the plaintiffs, and a $6,000 check drawn by the deceased Tomas Mendez Quinones in favor of Vanuffle Tube Corp. and endorsed by said corporation, which check the defendant Prudencio Mendez, also fraudulently withheld from the plaintiffs.

That out of the above mentioned $50,000 which was fraudulently withheld by Prudencio Mendez, the defendant Prudencio Mendez delivered to Miguel Mendez, his brother, the sum of $32,000 on November 1, 1945.

The Court finds that the defendants Prudencio Mendez and Miguel Mendez received $4,500 as dividends of the shares of stock of the Royal Bed & Spring Co., Inc. and from this amount, the plaintiffs are entitled to receive their corresponding share in conformity with the finding of the Court as to the stock which the Court holds belongs to plaintiffs.

The Court finds that the sum of $13,260 was received by the defendant Prudencio Mendez from March 28, 1941 until June 28, 1948, as compensation for occupying the post of Treasurer of the Royal Bed & Spring Co., Inc., said salary having been computed at the rate of $60 per week during said period.

The Court finds that the defendant Miguel Mendez received the sum of $9,060 from August 18, 1945 until the present time, as compensation for occupying the post of President of Royal Bed & Spring Co., Inc., said salary being computed at the rate of $60 per week during said period.

The Court finds that the defendant Prudencio Mendez received the sum of $1,125 during the period from October 23, 1944 until February 14, 1945, in the following manner, to wit: that during said period of time the corporation issued weekly checks in the sum of $75 in favor of Tirso Colon Morales as President. Such checks, after

having been issued, were delivered to Tirso Colon Morales by Alberto Ortiz, endorsed by Colon, and returned to the defendant Prudencio Mendez.

The Court finds that the deceased Tomas Mendez Quinones, as part of his scheme to defraud his wife and children of their legitimate property, set up a certain business, in the name of Ana Mendez Vda. Matta, for the purpose of avoiding compliance with OPA and price fixing regulations; that said business although in the name of Ana Mendez Vda. Matta as sole owner, belonged to Tomas Mendez Quinones. That Tomas Mendez Quinones delivered $15,000 to Ana Mendez Vda. de Matta, from the above mentioned business over a period of ten months.

The Court finds that the 40 shares of stock originally issued to Gonzalo Diago were not paid for by Gonzalo Diago nor by William Mendez, and said 40 shares of stock were never considered as having been owned by the heirs of Gonzalo Diago. The issuance of this stock in the name of Gonzalo Diago, and the circumstances surrounding the issuance of the stock of the Royal Bed & Spring Co. Inc., and other attending circumstances, being part of the scheme of the deceased Tomas Mendez Quinones to further his fraudulent purpose to defraud his wife and children.

The Court finds that the 40 shares of stock originally issued to Tirso Colon Morales never actually belonged to the said Tirso Colon Morales and were not paid for by him. The money for that purchase having come from the deceased Tomas Mendez Quinones, and also being part of the scheme of Tomas Mendez Quinones to defraud his wife and children.

That as of October 25, 1944, there were 130 shares of stock of the said Royal Bed & Spring Co., Inc., issued in the names of the following:

| | |
|---|---|
| Gonzalo Diago | 40 shares |
| Tirso Colon Morales | 40 " |
| Alberto Ortiz | 5 " |
| Prudencio Mendez | 5 " |
| Estate of Tomas Mendez Quinones | 40 " |

The Court finds that the deceased Tomas Mendez Quinones, in order to conceal the aggregate of the community property and his estate from his wife and children, due to separation proceedings then pending between the said Tomas Mendez Quinones and Estrella B. Mendez, his wife, fraudulently and illegally created a corporation under the name of Royal Bed & Spring Co., Inc. to which he transferred all the equipment, machinery, property and assets of his personal business concern and estate. The stock of said corporation was fraudulently issued as follows:

| | |
|---|---|
| Gonzalo Diago | 40 shares |
| Tirso Colon Morales | 40 " |
| Alberto Ortiz | 5 " |

The Court finds that the fraudulent acts and schemes of the deceased Tomas Mendez Quinones consisted among other things of transfers of assets and monies of his estate to his brothers and sisters; making false and simulated transfers of his properties to the said Royal Bed & Spring Co., Inc.; issuance of stock of said corporation and placing same in the names of said Gonzalo Diago and Tirso Colon Moralez, and which said stock was not paid for by the said Gonzalo Diago and Tirso Colon Morales. By paying one of his sisters the defendant Ana Mendez Vda. de Matta, $15,000 over a period of 10 months as profits from a business which was fraudulently set up by the deceased Tomas Mendez Quinones for the purpose of avoiding compliance with OPA Regulations and price fixing, and over which the defendant Ana Mendez Vda. de Matta was supposed to have been the head, and by the acts, conduct & behavior of the defendant Prudencio Mendez in wrongfully & fraudulently withholding $50,000 in cash and a $6,000 check, which he found in the safe of the deceased Tomas Mendez Quinones; by the conduct of Prudencio Mendez in carelessly, wrongfully and unlawfully giving to Miguel Mendez the sum of $32,000 of the above mentioned $50,000, and with which sum the said Miguel Mendez built an apartment house or building on property and lands belonging to him, the said Miguel Mendez, and which property, lands, apartment or

buildings are in the name of and owned by Miguel Mendez, notwithstanding that even as the said Prudencio Mendez and Miguel Mendez allege, the deceased Tomas Mendez Quinones' instructions were to give each of four sisters $10,000 each with which they could have a home. By the fact that the defendant Prudencio Mendez did not purchase a $10,000 bond for the children of Tomas Mendez Quinones, immediately after the said Prudencio Mendez wrongfully took the above mentioned $50,000, but awaited more than one year before purchasing said above mentioned bond.

The Court finds from the evidence that the entire course of conduct of the deceased together with Prudencio Mendez, Miguel Mendez and Ana Mendez Vda. Matta was such as to indicate clearly the scheme to defraud the wife of the deceased Tomas Mendez Quinones and children, of their legitimate properties.

The Court therefore makes the following conclusions of law.

## Conclusions of Law.

1. That the defendant Prudencio Mendez pay to the plaintiffs the sum of $50,000, which were taken from the safe of the deceased Tomas Mendez Quinones, together with interest at the rate of 6% on said $50,000 from the date of the death of the said Tomas Mendez Quinones.

2. That the defendent Prudencio Mendez return and pay to the plaintiffs the sum of $6,000 which is the item of the $6,000 check obtained by the said Prudencio Mendez from the safe and which check had been drawn in favor of the Vanuffle Tube Corporation and endorsed by said corporation, and which said check the defendant Prudencio Mendez fraudulently withheld from the plaintiffs.

3. That the defendant Ana M. Vda. de Matta return and pay to the plaintiffs the sum of $15,000 which were delivered by Tomas Mendez Quinones to the said Ana M. Vda. de Matta.

4. That the defendants Prudencio Mendez and Miguel Mendez return and pay to the plaintiffs the sum of $4,500 which they received as dividends of the shares of stock of the Royal Bed & Spring Co., Inc.

5. That the defendant Prudencio Mendez return and pay to the plaintiffs the sum of $13,260 which was the amount received by the said Prudencio Mendez from March 28, 1944 until June 28, 1948 as compensation for occupying the post of Treasurer of the Royal Bed & Spring Co., Inc.

6. That the defendant Miguel Mendez return and pay to the plaintiffs the sum of $9,060 received by the said Miguel Mendez from August 18, 1945 until the present time for occupying the post of President of the said Royal Bed & Spring Co., Inc.

7. That the defendant Prudencio Mendez return and pay to the plaintiffs the sum of $1,125 received by the said Prudencio Mendez from Oct. 23, 1944 until Feb. 14, 1945, during which period of time the corporation Royal Bed & Spring Co., Inc. issued weekly checks in the sum of $75 in favor of Tirso Colon Morales as President and said checks were delivered to and endorsed by the said Tirso Colon Morales and returned to the defendant Prudencio Mendez.

8. That the plaintiffs shall have the 40 shares of stock originally issued to Gonzalo Diago and the 40 shares of stock originally issued to Tirso Colon Morales. That the remaining 10 shares of stock of the Royal Bed & Spring Co., Inc. are the property of the following:

Alberto Ortiz       5 shares
Prudencio Mendez   5 shares.